JOHN F. EILENBERG, PROSECUTOR, v. THOMAS D. TAGGART, JR., RECORDER OF ATLANTIC CITY, ET AL., DEFENDANTS.

Argued October 6, 1937—Decided October 21, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and PARKER.

For the prosecutor, *Bolte & Miller* (*Murray Fredericks,* of counsel).

For the defendants, *Anthony J. Siracusa.*

The opinion of the court was delivered by

PARKER, J. The prosecutor was convicted before the recorder of Atlantic City of a violation of the zoning ordinance in that he did use and maintain certain premises at a specified number, and the building erected thereon, which premises are in a zone designated in the ordinance as an "A" residence zone, as a rooming house, in violation of section II of the ordinance. The section in question reads as follows:

"In an 'A' Residence Zone, no building or premises shall be used, and no building shall be erected or altered, which is arranged, intended or designed to be used except as a one-family dwelling."

The defense was in substance that the premises in question had been used as a rooming house before the adoption of the ordinance and that this use had been continued without substantial interruption; and that under this writ we are called upon to decide on the evidence whether that was the case.

The ordinance was adopted in November, 1929. It appeared by the testimony of one Ruth A. Stees that she purchased the property in April, 1929, and used it as a rooming house and apartment; that the premises contained on the first floor six rooms and private baths for each; and the second floor contained two apartments of five rooms and bath each; that the third floor contained four rooms each with private bath; and the fourth floor contained one room and private bath; that she rented rooms nightly, weekly and monthly, and by the season; that she furnished maid service, linens and electric current to the roomers; that there were no housekeeping facilities or common laundry, nor were there any meals served in the rooms; that there was a hotel register on the premises; and that this situation continued until 1934. Her daughter testified to the same effect. It will be observed that if this testimony correctly stated the situation at that time, and there seems to be no challenge of its correctness, the building in question was used both as an apartment house and as a rooming house, there being two or more apartments suitable for housekeeping purposes, and the rest of the rooms being available only for lodging purposes, the chamber work being done by the proprietor.

The claim of the defendants is, as we gather from the brief, that the premises were not operated as a rooming house before November 29th, 1929 (the date of the ordinance) but were originally operated as an apartment house and were continued as such from April, 1929, until December, 1934, and that this use was then materially changed from an apartment house to a rooming house by a Mr. Kopstein and thus continued up to the time of the complaint. The foregoing is substantially the language of the brief.

We have examined the testimony with care and find ourselves unable to concur in this view of the facts. It is undeniable we think that there were two apartments on the second floor with housekeeping facilities, but we think it is equally undeniable that the remainder of the house was devoted to rooms for lodgers without housekeeping facilities. The prosecution was predicated on the theory, and the argument now

is, that the part of the house devoted to lodging purposes had been discontinued for that purpose and used as apartments; in other words, that the house had changed from a combination rooming and apartment house to one entirely used as an apartment house, but we are unable to find that the testimony supports this theory; and, on the contrary, we think that it is untenable on the evidence. Much stress is laid on the testimony of a later owner called Russell Roney who operated the property from May to December, 1934. We have read his testimony with care and cannot see that it indicates any substantial change in the character of the combination use. It is true that Roney's testimony more than once used the word "apartment" to indicate a room for lodgers; but when his entire testimony is read, it is clear that the physical situation was exactly what it had been under former proprietors. He says, for example, that he rented out rooms and apartments in the building, and that in renting the rooms he supplied maid service, electric current and linens, but no housekeeping facilities. When asked whether there were any laundry facilities, he said, "only in the apartments. There were two five-room apartments, I think." He did not recollect any common laundry. He described the furniture in the rooms. On cross-examination he said that he rented the house for the purpose of subletting rooms and the apartments that were in it. Later on in his cross-examination he seems to have used the words "rooms" and "apartments" as interchangeable. For example, he testified that "there were about ten or twelve apartments, and at least two or three of them were vacant during the course of that summer—were actually kept vacant purposely, because so many people came in there for rooms by the night." As he had already testified that there were only two apartments and that the rest were for lodging purposes, it is clear that when he said ten or twelve apartments he meant ten or twelve lodging rooms. A little farther on he speaks in the same sentence of "apartments," and then speaks of "those rooms:" and his use of language is clarified by the following question and answer: "Q. How about the keys? Did you have sepa-

rate keys for each apartment? *A.* Yes—if you'll get the picture. They were one room and bath apartments, with the exception of the second sleeping floor, which had two large apartments, and, of course, there were separate keys for each room—that is, I call them room and bath."

The next tenant was one Kopstein whose testimony was to the same effect in regard to renting out rooms to lodgers on the same plan as previously. He said the house was sold to him as a rooming house, otherwise he would not have bought it. He seems to have conducted a restaurant downstairs in the building where the roomers could get meals. He testified that he supplied linens, maid service and electric current to the customers.

In our estimation the evidence is plenary to show that the house was a rooming house, at least to the extent of a rooming house except for the two apartments, as to which no question was raised at any time from a date prior to the adoption of the ordinance down to the time of the complaint, and that the judgment of conviction rests on no substantial basis.

Two technical questions of evidence in the case are as follows: There was introduced and admitted in evidence a prior complaint before the recorder against a previous proprietor named Simon for using the house as a rooming house; and this complaint had endorsed on it some memoranda by the recorder to the effect that there had been a plea of not guilty, a trial and a conviction. There was also introduced and admitted in evidence, over objection, a rule made by a justice of the supreme court discharging a rule to show cause why a writ of *certiorari* should not issue to review the Simon conviction. We think that certainly the latter rule was improperly admitted in evidence because it would prove nothing except the discharge of a rule to show cause when no writ had even been allowed. As to the prior conviction, the evidence was technically objectionable because clearly it was not a court record. Indeed, the defendants frankly say that they do not rely on either of these papers to support the conviction in the present cause. Reliance is placed on the case of *Kerr* v. *Atlantic City,* 108 *N. J. L.* 219, in which it was

held that this court, in reviewing a conviction before a director of public safety, will not weigh the evidence taken before him for the purpose of reaching an independent conclusion on the question of the guilt or innocence of the prosecutor, but will only consider such evidence for the purpose of determining whether or not it affords a rational basis for the judgment against him. To this rule we, of course, give our assent; but our examination of the evidence satisfies us that there is no rational basis for the judgment of conviction in this cause, and consequently it will be set aside.